**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------X
PATRICIA LYNCH,

     Plaintiff,


   -against-       **MEMORANDUM OF**
                 **DECISION AND ORDER**
THE SOUTHAMPTON ANIMAL SHELTER  10-CV-2917 (ADS) (ETB)
FOUNDATION INC., SUSAN ALLEN,
SUSAN KELLY, THE TOWN OF
SOUTHAMPTON, and DONALD
BAMBRICK,

      Defendants.

------------------------------------------------------X

<u>**APPEARANCES:**</u>

**The Law Offices of Steven A. Morelli, P.C**
Attorneys for the Plaintiff
1461 Franklin Avenue
Garden City, NY 11530
  By: Steven A. Morelli, Esq.
    Eric S. Tilton, Esq., Of Counsel

**Ohrenstein & Brown**
Attorneys for **T**he Southampton Animal Shelter Foundation Inc., Susan Allen, & Susan Kelly
101 Franklin Avenue
Garden City, NY 11530
  By: Michael D. Brown, Esq.
    Rosario DeVito, Esq., Of Counsel

**Smith & Newman, LLP**
Attorneys for The Town of Southampton & Donald Bambrick
850 Third Avenue, 18th Floor
New York, NY 10022
  By: Brian A. Smith, Esq., Of Counsel


**SPATT, District Judge**.

   This is the second case to come before this Court involving the plaintiff Patricia Lynch's

("Lynch" or "the Plaintiff") written and spoken criticism of the animal euthanasia policy and

operational policies at The Southampton Animal Shelter ("the Shelter"). The events underlying

the first case, <u>Lynch v. Town of Southampton</u> ("<u>Lynch I</u>"), No. 05-CV-4499 took place when the

Shelter was operated by the Town of Southampton (the "Town"), and arose from the Town's

decision to terminate Lynch as a volunteer at the Shelter on February 27, 2004.  In addition to the

Town, Lynch named her supervisor Donald Bambrick ("Bambrick") as a defendant in the case.

After a jury trial, the Town, but not Bambrick, was held liable pursuant to 42 U.S.C. § 1983 for

retaliating against Lynch for exercising her First Amendment right to free speech.

Subsequent to the resolution of <u>Lynch I</u>, the Town entered into an agreement with the

Southampton Animal Shelter Foundation, Inc. ("the Foundation") to privatize aspects of the

Shelter's operations.  On January 12, 2010, after the Foundation assumed control of the Shelter,

Lynch's application to volunteer at the Shelter was denied.  As a result, Lynch commenced the

instant  action against the Foundation, its senior officer and director Susan Allen ("Allen"), the

Director of Personnel Susan Kelly (("Kelly") and together with the Foundation and Allen "the

Foundation Defendants"), as well as the Town and Bambrick ("the Town Defendants").  The

Plaintiff alleges that the Foundation Defendants and the Town Defendants (collectively "the

Defendants") denied her application to volunteer at the Shelter in retaliation for her exercising of

her First Amendment rights to free speech and to petition the government for redress of her

grievances in violation of 42 U.S.C. §§ 1983, 1985, and 1986.

Presently before the Court are the motions by the Foundation Defendants and the Town

Defendants to dismiss the Plaintiff's complaint, or in the alternative to strike certain portions

thereof, pursuant to Federal Rules of Civil Procedure 12(f) ("Rule 12(f)").  Although filed

separately, the motions are substantively identical and therefore the Court will treat them as one

motion brought by all of the Defendants.  For the reasons set forth below, the Court denies the

motion to dismiss the complaint and grants in part and denies in part the motion to strike.

# I. BACKGROUND

Although the complaint in this action contains a considerable amount of detail, the basic facts are fairly straightforward. Patricia Lynch is an investigative journalist who, beginning in October 2000, started investigating conditions at The Southampton Animal Shelter. At that time, the Shelter was operated by the Town of Southampton, and was supervised by senior Animal Control Officer Donald Bambrick. From October 2000 until in or about February 2004, Lynch was a volunteer at the Shelter. However, Lynch's involvement with the Shelter extended beyond that of a volunteer. As an investigative journalist, Lynch asserts that she attempted to further the interests of the Shelter and she produced a documentary film about conditions at the Shelter in January 2001. In addition, in June of 2003, Lynch began a radio show called "Pet of the Week" to help to get animals adopted by members of the community. In addition, Lynch began writing a newspaper column called "Shelter Stories" for *The Southampton Press* regarding animals for adoption. As detailed more fully in the complaint, through her radio show, her "Shelter Stories" and other newspaper columns, letters to the editor, and other forms of public outreach, Lynch openly criticized, among other things: (1) the Shelter's animal euthanasia policies; (2) the Shelter's facility operations; (3) the manner of construction of a new shelter; (4) the use of taxpayer's money in the operations of the Shelter; and (5) the Shelter's adoption policies.

On February 24, 2004, Lynch filed a lawsuit in the state court against the Town seeking an order enjoining the Shelter from euthanizing animals. See Lynch v. Town of Southampton, Index No. 5966-2004 (N.Y. Sup. Ct., Suffolk County) (the "State Action"). According to Lynch, the Town was given notice of the impending motion for an injunction on February 23, 2004; the request for an injunction was filed on February 24, 2004; and was subsequently covered in the local press on February 25, 2004. On August 19, 2004, Justice Melvyn Tanenbaum rendered a

decision in the State Action, denying the request for an injunction and holding that there was "insufficient relevant and admissible evidence submitted to provide proof that the respondents have engaged in unreasonable and arbitrary decisions to euthanize dogs under the policy." (Brown Decl., Ex. B at 6.)

On February 27, 2004, three days after the Town received notice of the State Action, Lynch was terminated from her position as a volunteer at the Shelter and banned from further association with the Shelter. As a result, on September 22, 2005, Lynch commenced a federal action against the Town and Bambrick alleging that her position was terminated in retaliation for her speech criticizing the Shelter and its policies. See Lynch v. Town of Southampton ("Lynch I"), No. 05-CV-4499 (Spatt, J.). This Court held a jury trial in Lynch I between February 6 and February 12, 2007, and on February 14, 2007 the jury found that the Town, but not Bambrick, was liable for retaliating against Lynch. On December 2, 2008 the Second Circuit affirmed the jury verdict and the judgment. Lynch v. Town of Southampton, 2008 WL 5083010 (2d Cir. Dec. 02, 2008).

Subsequent to the Second Circuit's decision affirming the jury's verdict in Lynch I, the Shelter permitted Lynch to resume her duties as a volunteer dog walker.

In the spring of 2009, Lynch was allegedly approached by Susan Allen and Sonia Schotland to assist them with attempting to privatize the Shelter. To some extent, both Allen and Schotland had been previously involved with the Shelter. In fact, Lynch alleges that her public criticism of their involvement when the Shelter was operated by the Town resulted in both Allen and Schotland influencing the Town's decision to terminate her as a volunteer in 2004.

Lynch contends that Allen is a private donor and the co-founder of a charity called "Best Friends". The complaint in this action includes certain allegations about alleged improprieties by

4

the Best Friends charity, but there is no indication that Lynch actively reported or spoke out against Best Friends. Rather, the main source of Lynch's interactions with Allen prior to 2009 involve Lynch's allegations that Allen was actively involved in financing the Shelter's new facility in August 2002 and was Bambrick's silent partner in the operation of the Shelter until the summer of 2004. Lynch claims that in this capacity, Allen exerted undue influence and condoned certain misconduct at the Shelter which Lynch reported on in the press. As a result, Lynch claims that Allen retaliated against her in the press, and that Allen told Town officials that she would discontinue donating to the Shelter unless Lynch was no longer involved. Lynch contends that Allen's involvement was influential in the Town's decision to terminate her in February of 2004, and the most recent decision to deny her volunteer application.

Lynch's previous interaction with Schotland involved a non-profit shelter that Schotland co-founded called the Animal Rescue Fund ("ARF"). According to Lynch, at an undisclosed time, she published records that she received through the Freedom of Information Act purportedly showing that ARF gave dogs with behavioral problems to the Shelter to be euthanized. Lynch contends that in response, Schotland called her a liar and vilified her in the press, and that proponents of ARF influenced the Town's decision to terminate her as volunteer in 2004. Although Schotland is not a named defendant in this action, Lynch alleges that Schotland, as a director of the Foundation, currently has influence over the Foundation and the Town's decisions.

Despite the contentious nature of their previous interactions, Lynch claims that she assisted Allen and Schotland throughout 2009 with their goal of privatizing the Shelter by writing a number of letters to the editor of *The Southampton Press* and meeting with numerous Town officials to garner support for the plan. In or about September 2009, The Southampton

Animal Shelter Foundation, Inc., was incorporated as a non-profit corporation and began

negotiations with the Town to allow the Foundation to take over the operations of the Shelter.

On December 21, 2009, the Town entered into an agreement with the Foundation

permitting it to operate and manage the Shelter for a three-year term beginning January 1, 2010.

("the Shelter Operating Agreement").  One issue in this litigation is the scope of the Shelter

Operating Agreement and to what extent the Town remained involved in the relevant operations

of the Shelter.

In the first week of January 2010, when Lynch arrived at the Shelter to volunteer, she was

handed a volunteer application.  The volunteer application requested information with regard to

whether the applicant had ever been involved in litigation.  Lynch disclosed the State Action and

Lynch I.  On January 9, 2010, Lynch received a letter from defendant Susan Kelly, the

Foundation's Director of Personnel, requesting additional information about the two lawsuits,

which Lynch subsequently provided.  Then, on January 12, 2010, Kelly wrote to Lynch, stating

that the Shelter had sought the advice of counsel, and, based on her prior litigations, had decided

to decline her application to volunteer.  According to Lynch, approximately one week later,

another individual went to the Shelter to offer her services as a volunteer and was not required to

fill out a volunteer application or provide any information about past litigation.

As a result, on June 24, 2010, Lynch filed the instant action alleging that the Town

Defendants and the Foundation Defendants either jointly or as part of a conspiracy, denied her

application to volunteer at the Shelter in retaliation for her exercising of her First Amendment

rights to free speech and to petition the government for redress of her grievances in violation of

42 U.S.C. §§ 1983, 1985, and 1986.  Although the adverse employment action is different, the

underlying speech that Lynch contends serves as the basis for the retaliation is the same as the speech involved in <u>Lynch I</u>.

On September 7, 2010, the Foundation Defendants filed a motion to strike pursuant to Fed. R. Civ. P. 12(f) and on January 7, 2011, the Town Defendants filed a nearly identical motion. Accordingly, as stated above, the Court will address the motions as one motion brought by all of the Defendants.

The Defendants contend that the Court should either dismiss the complaint for violations of the pleading requirements in the Federal Rules of Civil Procedure or dismiss certain portions of the complaint that are irrelevant, scandalous, inflammatory, and prejudicial.

## II. DISCUSSION

Either *sua sponte* or on motion, the Court may dismiss the complaint in its entirety for failing to comply with the pleading requirements in the Federal Rules of Civil Procedure or may strike any portions of the complaint that violate Rule 12(f). The Court will address these two options separately.

## A. Whether the Court Should Dismiss the Complaint

The Defendants contend that the complaint is subject to dismissal because it does not comply with the requirements in the Federal Rules of Civil Procedure that: (1) a complaint should include a "short and plain statement of the claim", Fed. R. Civ. P. 8(a); (2) "[e]ach averment of a pleading shall be simple, concise, and direct", Fed. R. Civ. P. 8(e)(1); and (3) a complaint should include numbered paragraphs "each of which shall be limited as far as practicable of a statement of a single set of circumstances", Fed. R. Civ. P. 10(b).

The "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial". <u>Salahuddin</u>

v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).  Thus, "[w]hen a complaint fails to comply with these requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial."  Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995).  Some courts have found that dismissal is appropriate for "[c]omplaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim [because they] do not comport with [Rule 8's] goals and this system".  Infanti v. Scharpf, 06 CV 6552, 2008 WL 2397607, at *1 (E.D.N.Y. June 10, 2008) (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y.1972)).  The Second Circuit has cautioned, however, that dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Simmons v. Abruzzo, 49 F.3d 83, 86–87 (2d Cir. 1995) (quoting Salahuddin, 861 F.2d at 42).

Here, the Court finds that the complaint does not run afoul of Rule 8 or Rule 10(b).  With respect to the length of the complaint, the Defendants assert both that the Plaintiff attempted to disguise the true length of the complaint by combining paragraphs from the complaint in Lynch I and that the Plaintiff "bloated" the complaint by unnecessarily including excerpts from the Foundation Defendants correspondence to the Plaintiff and the New York Agricultural and Markets Law.  Although the 38 page, 178 paragraph complaint contains a considerable amount of detail, the Court finds that it "is sufficiently clear and provides [the Defendants] with notice of [the Plaintiff's] claims from which they may answer or otherwise move."  Sloup v. Loeffler, No. 05-CV-1766, 2006 WL 767869, at *3 (E.D.N.Y. Mar. 13, 2006); cf. Jones v. Nat'l Commc'ns & Surveillance Networks, 266 F. App'x 31, 32 (2d Cir. 2008) (affirming dismissal of a 58 page, single-spaced *pro se* complaint with 87 additional pages of attachments, alleging over 20

separate causes of action against more than 40 defendants for failure to meet the "short and plain statement" requirement of Rule 8); <u>Infanti</u>, 2008 WL 2397607 (dismissing a 90 page complaint comprised of over 500 paragraphs for running afoul of Rule 8's requirements); <u>Roberto's Fruit Market, Inc. v. Schaffer</u>, 13 F. Supp. 2d 390, 396 (E.D.N.Y. 1998) (dismissing a 108 page, 385 paragraph complaint for violating Rule 8 based on its finding that "the complaint [was] excessively long-winded and redundant").

The Defendants also contend that the by combining certain allegations that were separated in the <u>Lynch I</u> complaint, the Plaintiff has made it unduly burdensome for the Defendants to answer, and difficult for the Court to make *res judicata* determinations. However, combined paragraphs in sections that are otherwise nearly verbatim recitations of the allegations in the <u>Lynch I</u> complaint is unlikely to interfere with the Court's ability to make *res judicata* determinations and does not render the complaint "so confus[ing], ambiguous, vague, or otherwise unintelligible" so as to support dismissal. <u>Salahuddin</u>, 861 F.2d at 42

Finally, as discussed more fully below, the Court disagrees with the Defendants' contention that the complaint should be dismissed because the "majority" of the complaint is comprised of irrelevant and unduly prejudicial allegations. Although not every allegation in the complaint will ultimately be relevant or admissible, this is not a case where "dozens of paragraphs" are devoted to irrelevant or unduly prejudicial matters such that it is "impossible for the defendants to file a responsive pleading and for the Court to conduct orderly proceedings on [the] case". <u>Schaffer</u>, 13 F. Supp. 2d at 396.

## B. Whether the Court Should Strike Portions of the Complaint

The Defendants move this Court to strike categories or types of allegations that they contend constitute "redundant, immaterial, impertinent, or scandalous" matter in violation of

Rule 12(f).  Although the Defendants identify individual paragraphs as violating Rule 12(f), they are mostly cited as examples of offending allegations within a particular category, rather than as the subject of independent arguments.  As a result, the Court will not address every example cited by the Defendants, but rather will address the categories or types of allegations that the Defendants directly addressed, namely allegations regarding:  (1) opinions on the  Shelter's policies and practices; (2) the Plaintiff's professional background and the background of the Plaintiff's involvement with the Shelter; (3) the propensity of Allen, Schotland, and Bambrick for misconduct; and (4) excerpts from the Shelter Operating Agreement.

### 1. Legal Standards

#### a. Motion to Strike Pursuant to Rule 12(f)

Pursuant to Fed. R. Civ. P. 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  However, whether to grant such a motion is within the district court's discretion.  See E.E.O.C. v. Bay Ridge Toyota, Inc., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues."  In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005) (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)).  "A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court."  Cabble v. Rollieson, No. 04-CV-9413, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006).

"Motions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.'"

Crespo v. New York City Transit Auth., No. 01-CV-0671, 2002 WL 398805, at *11 (E.D.N.Y. Jan.7, 2002) (quoting Lennon v. Seaman, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999)).  A Rule 12(f) motion to strike matter as impertinent or immaterial, "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).  Thus, to prevail on a Rule 12(f) motion to strike, the movant must show "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant."  Roe v. City of New York, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).

### b. First Amendment Retaliation Claims

In order to determine whether the allegations in the complaint are relevant, the Court must view them in the context of the Plaintiff's claims.  Here, the Plaintiff claims that the Defendants retaliated against her in violation of 42 U.S.C. §§ 1983, 1985, and 1986 by terminating her position as a volunteer at the Shelter because she publicly criticized the Shelter's euthanasia policies and operational practices, and because of her involvement in the State Action and Lynch I.  The underlying deprivation that the Plaintiff alleges is a violation of her First Amendment rights to free speech and to petition the government for redress of grievances.

As a threshold matter, both section 1983 and section 1985 require the Plaintiff to show either the direct involvement of a state actor in the deprivation of the Plaintiff's constitutional rights or that the Foundation Defendants conduct constituted state action.  See Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc., 191 F.3d 198, 206 (2d Cir. 1999).  To successfully state a claim against the Foundation Defendants, who are private actors, under section 1983, the Plaintiff must sufficiently allege either:  (1) the existence of joint activity by the Town Defendants and the

Foundation Defendants or (2) that the Town Defendants and the Foundation Defendants conspired to retaliate against the Plaintiff and took overt acts in furtherance of that goal. See Young v. Suffolk County, 705 F. Supp. 2d 183, 195–96 (E.D.N.Y. 2010) (citing Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002)). With respect to the cause of action under section 1985, where, as here, the right allegedly infringed upon is the right to free speech, which is only protected against state interference, the plaintiff must show state involvement in the conspiracy to state a claim under section 1985(3). See Friends of Falun Gong v. Pacific Cultural Enter., Inc., 288 F. Supp. 2d 273 (E.D.N.Y. 2003) (citing Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) for the proposition that "the deprivation clause of § 1985(3) does not apply to private conspiracies aimed at a right protected only against state interference.")

With respect to the alleged constitutional deprivation, a public employee alleging retaliation for engaging in protected speech must show that: (1) her speech addressed a matter of public concern rather than personal interest; (2) she suffered an adverse employment action; and (3) the existence of a causal connection between the speech and the adverse employment action. See Singh v. City of New York, 524 F.3d 361, 372 (2d Cir. 2008); Gill v. Pidlypchak, 389 F.3d 379, 382 (2d Cir. 2004). The "right to petition the government for redress of grievances . . . is subject to the same constitutional analysis as the right to free speech." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993).

As to the first element, speech is on a matter of public concern and therefore a protected activity "if it relates 'to any matter of political, social, or other concern to the community.'" Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (quoting Connick v. Meyers, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). In analyzing whether speech or a petition

addresses a matter of public concern, courts must "focus on the motive of the speaker and attempt to determine whether the speech [or petition] was calculated to redress personal grievances or whether it had a broader public purpose." Lewis v. Cowen, 165 F.3d 154, 163–64 (2d Cir. 1999). With regards to the adverse employment action requirement, "[i]n the First Amendment context, . . . plaintiffs need only show that the retaliatory conduct in question 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" Nixon v. Blumenthal, 409 F. App'x 391, 392 (2d Cir. 2010) (quoting Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006)).

Finally, a causal connection between the protected speech or petition and the adverse employment action can be established "either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus". Morris v. Lindau, 196 F.3d 1102 110 (2d Cir. 1999).

### 2. Allegations Regarding the Shelter's Policies and Operational Practices

The Defendants primarily object to the complaint because they assert that the Plaintiff is using it "as an indictment of the Town's euthanasia policy and animal euthanasia in general". (Foundation Defs.' Br. at 8.) In particular, the Defendants contend that the Court should strike any portions of the complaint that include the Plaintiff's opinions about the euthanasia policies and operational practices at the Shelter because they are scandalous, inflammatory, and contrary to the findings of the court in the State Action.

The Court does not dispute that the detailed allegations of the Defendants' involvement in the cruel and unnecessary treatment of animals may be considered scandalous or inflammatory. On a motion to strike, however, "[i]t is not enough that the matter offends the

sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011); see also Illiano v. Mineola Union Free School Dist., 585 F. Supp. 2d 341, 357 (E.D.N.Y. 2008) (Spatt, J.) (denying a motion to strike allegations pertaining to a defendant's alleged anti-Semitic remarks because they were relevant to gender-based hostile work environment claims and retaliation claims). Furthermore, the fact that a complaint may be "overly narrative or contain generalized statements or matters of opinion" is not in and of itself grounds to strike portions of the complaint absent a showing that the allegations "are either irrelevant or unsupported". Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008).

As an initial matter, the Defendants argue that the Plaintiff's speech is irrelevant because the Plaintiff will be unable to establish that the denial of her volunteer application was equivalent to an adverse employment action. In this regard the Defendants conflate the merits of the complaint with the relevance of the Plaintiff's allegations. The Court's focus on a Rule 12(f) motion is not the merits of the complaint or even whether it plausibly states a claim. Rather, accepting the allegations as true, the Court looks to whether they are potentially relevant to the Plaintiff's claims and whether they are unduly prejudicial to the Defendants.

Here, the Plaintiff's allegations regarding the Shelter's policies and operational practices are relevant both to establishing that her speech addressed matters of public concern and to provide the background, motivation, context, and content of her speech and lawsuits that serve as the basis for her retaliation claims. Contrary to the Defendants contention, most of the allegations addressing these topics in the complaint are easily identifiable as the Plaintiff's speech and therefore directly relevant. For example, the Defendants cite to paragraph 45 as an

example of an "irrelevant" allegation that was "included for the sole purpose of inflaming the reader". (Foundation Defs.' Br. at 6.) Paragraph 45 states:

> Lynch's letters to the editor, published in The Southampton Press on March 14, 2002, March 28, 2002, April 18, 2002, May 16, 2002, and January 15, 2004, also criticized aspects of the construction, which became a legal issue between the Town and the construction company. The letters also address facility operations, the need for an animal behaviorist at the Shelter, up-to-date records, and the number of unnecessary euthanasia's that continued to occur.

(Compl., ¶ 45.) Here, the allegation identifies: (1) the form of the Plaintiff's speech —letters to the editor; (2) where it was published—*The Southampton Press*; (3) when it was published—March 14, 2002, March 28, 2002, April 18, 2002, May 16, 2002, and January 15, 2004; and (4) the content of the Plaintiff's speech—criticizing specific policies and practices at the Shelter. Thus, paragraph 45, and other paragraphs containing the same level of detail, is directly relevant to the Plaintiff's underlying claims.

This is true regardless of the fact that the allegations contain the Plaintiff's opinions. The Plaintiff's opinions and observations, although critical and often inflammatory, also constituted the content of her speech. The Court is cognizant of the fact that the Plaintiff also includes a fair number of her opinions and observations in allegations that she contends are relevant to provide background information as well as the motivation and context for her speech. Ultimately, there may be reasons to limit the use of evidence regarding the background, motivation, or context as opposed to the content of the Plaintiff's speech. However "it cannot be said at this stage of the litigation that those allegations have 'no bearing on the issues in the case' or would prejudice [the Defendants]." S.E.C. v. Treadway, No. 11-CV-1539, 2011 WL 2623469, at *2 (S.D.N.Y. June 29, 2011) (citing Metrokane, Inc., 160 F.Supp.2d at 642).

However, there are some paragraphs that the Plaintiff contends relate to the content and context of her speech that deviate from the level of detail in paragraph 45. These allegations are contained in two of the more controversial sections of the complaint entitled "Adoption Policies at the Shelter" (¶¶ 47–64) ("the Adoption Section") and "Euthanasia Issues" (¶¶ 65–80) ("the Euthanasia Section").

In contrast to paragraph 45, allegations in the Adoption Section and Euthanasia Section consist of the Plaintiff's often inflammatory opinions and criticism of the Shelter. These statements then are either accompanied or followed by allegations that she "publicized" or "brought attention to" the alleged deficiencies with the adoption and euthanasia policies at the Shelter. For example, the Plaintiff includes in detail the stories of two dogs, Thunder and Rowan, who she alleges were euthanized as a result of either improper policies at the Shelter or improper motivations of the Shelter's employees. Included in these allegations are a number of personal attacks on Bambrick. After recounting the tales of Thunder and Rowan, the Plaintiff concludes by stating that she "publicized" their stories.

The relevance and prejudice to the Defendants by these allegations, and the other allegations in the Adoption Section and Euthanasia Section that follow the same format hinge on what aspects of these allegations were included in the "publicized" versions. For example, if the Plaintiff's speech relating to Thunder and Rowan included the same detail that is in the complaint then, regardless of any inflammatory or scandalous aspects, they would be relevant to identifying the Plaintiff's speech and as circumstantial evidence of Bambrick's retaliatory animus. Furthermore, they would already be a part of the public record and generally available, detracting from any potential prejudice. Although it is a close call, when reading a complaint, the Court must view it in the light most favorable to the Plaintiff and make all inferences in the

16

Plaintiff's favor. Accordingly, the Court cannot say at this stage in the litigation that the majority of the allegations in the Adoption Section and Euthanasia Section are wholly irrelevant or impertinent to the Plaintiff's claims sufficient to warrant the dismissal of the complaint or striking of the allegations.

Regardless of whatever bad intentions the Defendants contend motivated the Plaintiff to recount her allegations in this manner, even allegations that "may not pass Rule 11 scrutiny at a later stage in the litigation" will not be stricken if they have some "possible bearing on the subject matter of the plaintiff's claim". Velez v. Lisi, 164 F.R.D. 165, 167 (S.D.N.Y. 1995) (rejecting defendants motion to strike purportedly baseless allegations of perjury and criminal misconduct asserted for harassment and intimidation purposes because the allegations were "sufficiently related to the plaintiff's overall claim"). Moreover, the Court notes that the Defendants "will have ample opportunity after discovery to show that these allegations are baseless or irrelevant to Plaintiffs' claims." Newkirk v. Village of Steger, No. 02-CV-9077, 2004 WL 2191589, at *24 (N.D.Ill. 2004); see also Smith v. AVSC Intern., Inc., 148 F. Supp. 2d 302, 317–18 (S.D.N.Y. 2001) (denying a motion to strike a paragraph from a complaint that referred to death threats the plaintiff allegedly received after reporting discrimination because "while clearly inflammatory" if the plaintiff were able to gather proof of its relevance to his retaliation claim it would be "highly probative of retaliation" but noting that if the plaintiff were unable to uncover such evidence the paragraph would be "be struck upon proper motion after discovery").

The Defendants further contend that the Plaintiff's allegations containing her opinions and the opinions of animal behaviorists regarding the Shelter's euthanasia and adoption policies are irrelevant to the instant litigation because they contradict the court's holding in the State Action that the Shelter's euthanasia policy is reasonable. However, the Defendants

misunderstand the relevance of the State Action.  Here, the Plaintiff is alleging that the Defendants violated her First Amendment right to petition the government by retaliating against her for initiating the State Action and for publicly criticizing the Shelter's policies.  Thus, the State Action is relevant not for its outcome, but for its commencement.  Similarly, the Plaintiff's speech is relevant not for its truth, but for its classification as a protected activity.  Accordingly, speech which contradicts the holding of the court in the State Action is not irrelevant.

In addition, the Supreme Court recently held in <u>Borough of Duryea v. Guarnieri</u>, that the public concern requirement is also applicable to a public employee's retaliation claim under the Petition Clause and "whether an employee's petition relates to a matter of public concern will [similarly] depend on the content, form, and context of the petition, as revealed by the whole record." 131 S. Ct. 2488, 2501 (2011) (internal quotation marks omitted).  Thus, the Court cannot say at this time that the allegations relating to the opinions of animal behaviorists and their speech are  not relevant to the Plaintiff's claim that the Defendants retaliated against her for filing the State Action.

Furthermore, the Court finds that the Defendants have failed to show that they are prejudiced by the allegations relating to the Shelter's policies and practices.  "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available."  5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011).  Some of the Plaintiff's statements may indeed be scandalous, inflammatory, and contrary to the findings of the court in the State Action, but they are the same statements that the Plaintiff alleges she made in letters to the editor, newspaper columns, radio shows, and other forms of public

communication.  These allegations, along with the Defendants comments about the Plaintiff, are already "public" and "generally available".  In fact, the majority of these allegations have been part of the public record and generally available since the nearly identical complaint was filed in Lynch I.

In addition, the Defendants concern about prejudice resulting from the jury seeing the allegedly irrelevant, scandalous, or inflammatory material is unfounded.  As is the practice of this Court, the jury will only see such allegations if the Court ultimately determines that they are relevant and admissible under the Federal Rules of Evidence.

The Foundation Defendants also contend that they are prejudiced by the inclusion of allegations regarding the policies of the Shelter when it was run by the Town.  However, such confusion is unlikely because, although lengthy, the complaint is well-organized and does not lump together the allegations relating to the Town Defendant's conduct with the conduct of the Foundation Defendants.  To the extent that certain allegations directly allege involvement by a Foundation Defendant with the Shelter when it was run by the Town, the Plaintiff is entitled to plead facts supporting her allegations that the Town Defendants and Foundation Defendants acted together or conspired with one another.

Accordingly, the Court denies the Defendants motion to strike the portions of the complaint addressing the Shelter's euthanasia policies and operational practices.

### 3. Allegations Regarding the Plaintiff's Professional History and Initial Involvement with the Shelter

The Defendants contend that the Court should strike as impertinent background material allegations in the complaint:  (1) detailing the Plaintiff's professional history and the discussion of her initial interest in the Shelter and (2) copied from the complaint in Lynch I.  The Court disagrees.  Here, the allegations pertaining to the Plaintiff's professional history constitute

generally admissible background information and are also relevant to establishing the Defendants' retaliatory animus. Furthermore, the Plaintiff contends that she was a public employee, and therefore the allegations concerning her initial involvement with the Shelter are relevant to show that her speech was on a matter of public concern. See Martinez v. Sanders, 2004 WL 1234041 (S.D.N.Y. 2004) (stating that the allegations concerning the plaintiff's prior employment and how she came to work for the defendant "contain appropriate background evidence that is properly admissible and relevant").

Moreover, even assuming that a portion of the background material is irrelevant or immaterial, allegations that "supply background or historical material or other matter of an evidentiary nature" normally will "not be stricken from the pleadings unless they are unduly prejudicial to the defendant." Impulsive Music v. Pomodoro Grill, Inc., 2008 WL 4998474 (W.D.N.Y. 2008). The Defendants assert that they will be prejudiced if these allegations are presented to the jury as evidence. However, the relevancy and admissibility of evidence concerning the Plaintiff's professional background and her involvement with the Shelter "require the context of an ongoing and unfolding trial in which to be properly decided" and in any event should not be decided "on the sterile field of the pleadings alone". Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

Finally, the Court finds that the 88 paragraphs in the complaint that are copied nearly verbatim from the complaint in Lynch I do not constitute irrelevant background information. To the contrary, these allegations are equally applicable to the instant action insofar as the Plaintiff is alleging that the same speech that led the Town to terminate her volunteer position in 2004 also influenced the actions of the Town Defendants and Foundation Defendants to deny her application to volunteer in 2009.

### 4. Allegations Regarding Allen, Schotland, and Bambrick's "Propensity for Misconduct"

In addition to seeking the dismissal of the complaint, the Defendants assert that the Court should strike certain paragraphs that the Defendants contend are not supported by admissible evidence and are therefore immaterial and should be stricken. In particular, the Defendants object to specific paragraphs: (1) alleging improprieties and investigations into Allen's charity "Best Friends" (Compl. ¶¶ 54, 97–99); (2) describing the Plaintiff's speech regarding Schotland and the ARF's relationship with the Shelter and Schotland and ARF's influence on the Town and the Foundation (Compl., ¶¶ 106–111); and (3) alleging similar retaliatory actions allegedly taken by Bambrick against another volunteer (Compl., ¶ 121). The Plaintiff contends that these allegations are relevant to establishing a causal connection between her speech, lawsuits, and the denial of her volunteer application.

The Defendants contend that the Court should strike paragraphs 54, 97, 98, and 99 that relate to Allen's charity "Best Friends", because they are irrelevant and are being used to show a propensity for misconduct, which is inadmissible. The Court agrees. These paragraphs relate to accusations that the Best Friends charity, which is not a party to this action, misappropriated its name, and that the Best Friends charity has been subject to an "inquiry" by the State Attorney General's office. Although the Plaintiff contends that these allegations are relevant to Allen's retaliatory animus and the subject of her speech in the form of letters to the editor, the complaint is void of any allegation that Allen was aware that the Plaintiff had inquired about the Best Friends charity, or that the Plaintiff published any information about the alleged misconduct. Moreover, references to a preliminary investigation that is unrelated to the allegations in the complaint and that did not result in "an adjudication on the merits or legal or permissible findings of fact" is immaterial as a matter of law and serves no purpose other than to inflame the

reader.  In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 218 F.R.D. 76, 79

(S.D.N.Y. 2003) ("Similarly, references to an Attorney General's conclusory report following a

preliminary investigation in a case that never was presented for nor reached an adjudication upon

the merits, are also immaterial under Rule 12(f)."); see also Shahzad v. H.J. Meyers & Co., Inc.,

No. 95-CV6196, 1997 WL 47817, at *13–14 (S.D.N.Y. Feb. 6, 1997) (striking the affidavit of an

SEC investigator filed in a separate action as unrelated and serving no purpose in the present

case other than to inflame the reader).

However, at this point, the Court cannot say that the allegations relating to Bambrick,

Schotland, and ARF's prior misconduct are irrelevant or inadmissible. With regard to Bambrick,

the Defendants seek to strike paragraph 121, which alleges that in 2004 Bambrick dismissed

another volunteer for being disruptive.  However, evidence supporting the allegation that

Bambrick fired another volunteer for engaging in "disruptive" behavior may be admissible in

that one way to show a causal connection between protected speech and an adverse employment

action is "through other circumstantial evidence such as disparate treatment of fellow employees

who engaged in similar conduct".  Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (quoting

Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).

As to Schotland and ARF, while neither is a directly named party, their actions may

nonetheless be relevant to the Plaintiff's claims.  See Curto v. Medical World Commc'ns, Inc.,

388 F. Supp. 2d 101, 113 (E.D.N.Y. 2005) (denying a motion to strike an allegation regarding a

non-party witness where the allegation could be relevant to the claim).  Unlike the allegations

regarding Best Friends, the Plaintiff alleges in the complaint that she published the information

she received on ARF and that as a result, Schotland spoke out against her in the press.  As

previously stated, the Plaintiff is entitled to identify the speech that she contends served as the

basis for her retaliation claim as well as any incidence that may serve as circumstantial evidence of retaliatory animus.  Furthermore, Schotland is currently a director of the Foundation, and the Plaintiff's allegations regarding ARF's influence over the Town when it ran the Shelter, and Schotland's current influence over the Foundation's decisions may be relevant to establishing the elements of state action and conspiracy.

### 5. Excerpts from the Shelter Operating Agreement

Finally, the Defendants allege that the Court should strike those paragraphs of the complaint containing excerpts from the Shelter Operating Agreement because the excerpts are intentionally misleading.  However, a Rule 12(f) motion is not the proper forum for addressing this concern.  The Shelter Operating Agreement is not impertinent or immaterial.  To the contrary, it is directly relevant to one of the main issues in this case, namely to what extent the Town Defendants remained involved in the personnel decisions at the Shelter.  Nor does a selective quotation constitute inflammatory or scandalous material.  In addition, including a few selective quotations from a document attached as an exhibit to the complaint is not so redundant as to warrant striking them under Rule 12(f).  To the extent the Defendants contend that the Plaintiff was motivated by an improper purpose, that is the proper subject of a Rule 11, not a Rule 12 motion.  Accordingly, the Court denies the Defendants motion to strike the paragraphs containing excerpts from the Shelter Operating Agreement.

### III.  CONCLUSION

For the foregoing reasons, the Court grants the Defendants motion to strike paragraphs 54, 97, 98, and 99 of the complaint, but denies the Defendants motion to dismiss the complaint or strike any additional portions of the complaint.  This is not to say that every allegation in the complaint is relevant or will ultimately be admissible.   However, most of the allegations that the

Defendants object to identify and provide context for the speech and the lawsuits that are at the very core of the Plaintiff's claim. "It is not the job of the Court to micro-manage pleadings and the Second Circuit has stated that 'the courts should not tamper with the pleadings unless there is strong reason for so doing.' Sloup v. Loeffler, No. 05-CV-1766, 2006 WL 767869, at *3 (E.D.N.Y. 2006) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.1976).) Although the Court does not doubt that the Plaintiff could have drafted her complaint with a less sensationalism and exposition, the allegations in the complaint do not strike this Court as so wholly impertinent, scandalous, or prejudicial as to presently warrant the "drastic remedy" authorized by Rule 12(f).

**SO ORDERED.**
Dated:  Central Islip, New York
July 29, 2011

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge