UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
PATRICIA LYNCH,

|                          |                              |
|--------------------------|------------------------------|
| Plaintiff,               | MEMORANDUM OPINION AND ORDER |
| -against-                | CV 10-2917 (ADS)(ETB)        |

THE SOUTHAMPTON ANIMAL SHELTER
FOUNDATION, INC., SUSAN ALLEN, SUSAN
KELLY, THE TOWN OF SOUTHAMPTON,
and DONALD BAMBRICK,
                                    Defendants.
-----------------------------------------------------------------------X

Before the court is the motion by defendants to certify the plaintiff in civil contempt for

her alleged violation of a confidentiality order by publishing in a local newspaper certain

discovery material marked "confidential."  See 28 U.S.C. § 636(e) ("Upon the commission of

any such act [of contempt]... the magistrate shall forthwith certify the facts to a judge of the

district court").  For the reasons that follow I decline to so certify.


FACTS

I.      Background

        This First Amendment civil rights action arises out of a dispute between plaintiff Patricia

Lynch, a retired journalist, and defendants, the Town of Southampton Animal Shelter

Foundation, Inc. ("the Foundation"), the Town of Southampton ("the Town"), Susan Allen,

Susan Kelly, and Donald Bambrick.  The defendant Foundation is a non-profit organization that

was incorporated in 2009 for the purpose of privatizing the Southampton Animal Shelter.

(Complaint at ¶ 147-49.)  The Foundation currently operates and manages the Southampton

Animal Shelter, pursuant to an agreement with the Town. (Complaint at ¶ 156.) Defendants

Susan Allen and Susan Kelly are directors of the Foundation. (Complaint at ¶ 12, 13.)

Defendant Donald Bambrick is employed by the Town as its animal shelter supervisor, and is

also employed by the Foundation as its director of operations at the shelter. (Complaint at ¶ 15.)

The plaintiff alleges that the defendants engaged in retaliation by excluding her from the

volunteer dog walking project at the Foundation based on her exercise of her First Amendment

rights by publicly criticizing the defendants and commencing a law suit against the Town and

Foundation. (Complaint at ¶ 5-7.)


### A)     The Confidentiality Order

On April 21, 2011, the Court "so ordered" a stipulation entered into by all parties

agreeing to maintain the confidentiality of any and all materials produced during discovery that

were designated by either party as "confidential" ("the Confidentiality Order") (see

Confidentiality Order, Hearing Exhibit ("Hrg. Ex.") 2). The Confidentiality Order, in relevant

part, provides that:

> A party may disclose Confidential Information produced and
> designated by any other person only to "Qualified Persons" with
> respect to the Action. "Qualified Persons," as used herein, shall
> mean outside counsel of record representing a party, including
> associate attorneys, paralegals, secretaries, and clerical assistants;...
> the parties, including current officers, directors, and employees of
> parties... their insurers and appointed counsel[.]"

(Confidentiality Order, Hrg. Ex. 2 at ¶ 3(b)(i), 3(b)(v).)

With regard to information that is a matter of public record, the Confidentiality Order

states:

> Nothing herein shall prevent or in any way limit disclosure, use or dissemination of any documents or information that are in the public domain or which now are, or hereinafter become, available to a party independent of or outside of discovery proceedings or subpoenas issued in the Action.

(Confidentiality Order, Hrg. Ex. 2 at ¶ 15.)


B)      The Alleged Contempt

Defendants maintain that plaintiff, Patricia Lynch, violated the Confidentiality Order by

publicly disclosing confidential information that she had acquired through discovery on two

separate occasions.  An evidentiary hearing was held before the undersigned on July 12, 2012.

(Transcript of Hearing Before the Honorable E. Thomas Boyle, United States Magistrate Judge,

on July 12, 2012 ("Hrg. Tr.") at 1.)

Defendants assert that plaintiff violated the Confidentiality Order on November 10, 2011

and again on December 15, 2011.  On those dates, plaintiff published in a local newspaper (The

Southampton Press) letters to the editor containing the personal wage and tax information of

defendants Donald Bambrick and Susan Allen.  (Hrg. Tr. at 21:7-22:25; see also Hrg. Ex. 6 & 7.)

Both letters to the editor were published by The Southampton Press.

In the November 10, 2011 publication, plaintiff's letter, in relevant part, states:

> This January, Ms. Allen's non-profit organization [the Foundation] will receive a third stipend of $300,000 from the taxpayers of Southampton, who pay for most of the running of the shelter and civil service employees, one of whom, Donald Bambrick, also receives an extra $48,000 from Ms. Allen in addition to his civil service pay and benefits.

(Hrg. Ex. 6 at ¶ 4.)

In the letter published on December 15, 2011, plaintiff, in relevant part, wrote:

> Taxpayers pay Mr. Bambrick his civil service pay, benefits, etc., and
> he also gets $48,000 a year from Ms. Allen, according to discovery
> papers I reviewed in our current lawsuit against the foundation for
> banning me illegally and without cause.

(Hrg. Ex. 7 at ¶ 1 (emphasis added).)  The challenged portions of these letters to the editor is the

reference to Mr. Bambrick's salary from Ms. Allen in the sum of $48,000.

Defendants maintain that plaintiff could only have obtained the information regarding the

salary Ms. Allen paid to Mr. Bambrick through W-2 forms plaintiff received in discovery that

had been labeled "confidential" by defendants.  (Hrg. Tr. 11:18-14:11, 22:8-12; Hrg. Ex. 3, 4, &

5).  Examination of the documents produced by defendants reveals that all were stamped as

"Confidential" pursuant to the terms of the Confidentiality Order.  (See Confidentiality Order,

Hrg. Ex. 2 at ¶ 3; see also Hrg. Ex. 3, 4, & 5 (the W-2 forms of Susan Allen and Donald

Bambrick, bearing the "Confidential" stamp).)  Both Mr. Bambrick and Ms. Allen testified that

they never discussed the information contained within the W-2 forms with anyone else, other

than their attorneys and accountants, and that they agreed to provide the W-2 forms in the course

of discovery with the understanding that such documents would be protected by the

Confidentiality Order.  (Hrg. Tr. at 22:8-22:25, 11:18-12:15.)  I credit this testimony.

Ms. Lynch testified that she had seen the W-2 forms in question during the course of

discovery (Hrg. Tr. at 78:12-16), and was aware that the forms had been marked "confidential"

(id.; see also Hrg. Ex. 3, 4, & 5), but believed that she was free to publish said information

because it was "public record" (Hrg. Tr. at 73:19-20) and had also been reported to her by

"anonymous sources" (Hrg. Tr. at 74:1-9).  I credit this testimony with respect to the November

10, 2011 publication, but not as to the letter to the editor on December 15, 2011 since the

plaintiff's letter specifically identifies that it is based on "discovery papers I reviewed in our

current lawsuit." (Hrg. Ex. 7 at ¶ 1.)

The amount of Mr. Bambrick's Town salary as its animal shelter supervisor is eighty-

nine thousand dollars ($89,000) and is not claimed to be confidential. (Hrg. Tr. at 28:8-13.) He

is also, however, required to disclose to the public as a Town official the fact that he earns a

salary from the private Foundation in addition to his salary as a Town official each year. (Hrg.

Tr. at 24:10-17.) The Annual Statement of Financial Disclosure required by the Town further

requires Mr. Bambrick to identify the range within which his outside salary falls. (Hrg. Tr. at

28:14-29:1.) On the form that Mr. Bambrick filed on April 23, 2011, he identified his outside

employer as "SASF"[1] and disclosed that he earned "$20,000 to under $60,000" from that private

employment in calendar year 2010. (Annual Statement of Financial Disclosure for Calendar Year

2010, Hrg. Ex. 9.) Southampton Town Code § 23-10 provides that[2]:

> Annual disclosure statements required to be filed pursuant to this
> chapter shall be available for public inspection in the office of the
> Town Clerk.

SOUTHAMPTON, N.Y. CODE § 23-10 (2010).[3]

---

[1] Mr. Bambrick testified that "SASF" stands for "Southampton Animal Shelter Foundation." (Hrg. Tr. at 30:15-25.)

[2] A court may take judicial notice of any fact that is "not subject to reasonable dispute because it... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201 (b)(2); see also Soundview Assocs. v. Town of Riverhead, 725 F.Supp.2d 320, 337 n.4 (E.D.N.Y. 2010) (citing Rule 201(b)(2) in support of court's decision to take judicial notice of relevant provisions of the Riverhead Town Code); The Players, Inc. v. City of N.Y., 371 F.Supp.2d 522, 531 n.5 (S.D.N.Y. 2005) ("The Court may take judicial notice of the [defendant] City's... ordinances and regulations.") (citations omitted).

[3] Available at http://ecode360.com/SO0286.

Thus, Town Code makes clear that Mr. Bambrick's employment with the Foundation, as well as the general range of salary the Foundation paid to him, was part of a publicly-accessible record[4] at the time that Ms. Lynch's letters to the editor were published in The Southampton Press.

The fact that Ms. Allen is the Foundation's primary benefactor and therefore the donor of the $48,000 salary of Mr. Bambrick is also part of the public record. More specifically, the Court takes judicial notice[5] of several articles published in local newspapers that delineate Ms. Allen's financial relationship with the Foundation. For example, in an article published on October 19, 2009, The Southampton Press noted: "Under Ms. Allen's proposal [to privatize the Town Animal Shelter], the town would pay $1.5 million over three years to the foundation, while an additional $1.5 million is footed by Ms. Allen to cover added costs." Bryan Finlayson,

---

[4] Defendants argue that New York Executive Law § 94(19)(a)(1) provides that the amount of Mr. Bambrick's compensation from the Foundation, as disclosed on the annual disclosure form, is to be kept confidential. However, § 94 is concerned exclusively with records "filed pursuant to section seventy-three-a of the public officers law." N.Y. EXEC. LAW § 94(19)(a)(1) (Consol. 2012). Section 73-A of the Public Officers Law only mandates the filing of financial disclosure forms by state employees and officials. See N.Y. PUB. OFFICERS LAW § 73-A(2) (Consol. 2012). Additionally, the form Mr. Bambrick filled out is explicitly identified as a Town, rather than state, form. (See Annual Statement of Financial Disclosure, Hrg. Ex. 9 at 1 (identifying the form itself as "Annual Statement of Financial Disclosure - Town of Southampton").) Mr. Bambrick's disclosure form is thus clearly filed pursuant to Town, rather than state, law, and as such, the public availability of this information is governed by the relevant portions of the Town Code cited herein.

[5] See n. 2, supra; see also Patsy's Italian Rest. v. Banas, 575 F.Supp.2d 427, 443 n. 18 ("It is generally proper to take judicial notice of articles and [w]eb sites published on the [i]nternet.") (citations omitted); Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 549 (2d Cir. 2002) (taking judicial notice of information readily available on a Web site); Gonzalez v. National Westminster Bank PLC, 847 F.Supp.2d 567, 569 n.2 (S.D.N.Y. 2012) ("Court may take judicial notice of publicly available information including newspaper articles and other public disclosures.") (emphasis added).

Southampton Town Will Try Negotiating With Shelter Bidder, SOUTHAMPTON PRESS, Oct. 19,

2009, http://www.27east.com/news/article.cfm/Hampton-Bays/239327/Southampton-Town-

will-try-negotiating-with-shelter-bidder.  Similarly, Ms. Allen was identified as "the principal

financial backer of the foundation" in an article published in the Sag Harbor Express in October

of 2009.  Marissa Maier, Petition Backs Private Bid for Animal Shelter, SAG HARBOR EXPRESS,

October 19, 2009, http://sagharbor online.com/sagharborexpress/page-1/petition-backs-private-

bid-for-animal-shelter-5060.

The fact that Ms. Allen donated over $1 million to the Town's animal shelter in 1999,

when the shelter was still being run by the Town rather than the Foundation, is also a matter of

public record.  See, e.g. Mitchell Freedman, Controversy in Southampton: Pet Shelter to Get

New Director, NEWSDAY, Aug. 20, 2004 at A20 (identifying Susan Allen as "the Southampton

woman who made the $1.4 million donation" to the Town's animal shelter); Maier, Petition

Backs Private Bid for Animal Shelter, supra ("Over the years, Allen has made several generous

donations to the shelter, including over $1 million in 1999 when the shelter was first built.");

Hallie D. Martin, Foundation Takes Reins at Southampton Town Animal Shelter,

SOUTHAMPTON PRESS, Jan. 20, 2010, http://www.27east.com/news/article.cfm/Hampton-

Bays/254911/ Foundation-takes- reins-at-Southampton-Town-Animal-Shelter ("Philanthropist

Susan Allen... contributed $1.4 million to help build the shelter building in 1999"); Bryan

Finlayson, Southampton Councilwoman Mulls Bid to Privatize Town Animal Shelter,

SOUTHAMPTON PRESS, Oct. 7, 2009, http://www.27east.com/news/article.cfm/Southampton/

239116/Southampton- councilwoman-mulls-bids-to-privatize-town-animal-shelter (identifying

Susan Allen as "a Southampton resident and philanthropist who donated more than $1.4 million

to help build the shelter in 1999.").


C)      Request for Sanctions

In addition to a contempt certification the movants also request that they be awarded

attorney's fees and costs, and that the Court further sanction plaintiff by imposing an additional

sanction of $0.50 for each of the 90,000 online readers and $1.00 for each of the approximately

17,000 print edition subscribers of The Southampton Press in order to deter further violations of

the Court's Orders.  (Memorandum of Law in Support of Defendants' Motion to Hold Plaintiff,

Patricia Lynch, in Contempt of Court and for Sanctions dated Mar. 8, 2012 ("Def. Mar. Mem. of

Law") at 20.)


DISCUSSION

II.      Jurisdiction of a Magistrate Judge in Contempt Proceedings

Under Federal Rule of Civil Procedure 37(b)(2), a court may find a party in contempt of

court if the party "fail[s] to obey any order except an order to submit to a physical or mental

examination."  FED. R. CIV. P. 37(b)(2)(A)(vii).  Rule 37(b) has been read to include a party's

failure to abide by a protective order issued by a court pursuant to Rule 26(c) of the Federal

Rules of Civil Procedure.  Dorsett v. County of Nassau, 10 Civ. 1258, 2012 U.S. Dist. LEXIS

79990, at *16-17 (E.D.N.Y. June 7, 2012) ("noncompliance with protective orders issued

pursuant to Rule 26(c) may be sanctioned under [Rule 37(b)(2)]"); see also Koch v. Greenberg,

No. 07 Civ. 9600, 2011 U.S. Dist. LEXIS 114811, at *26-27 (S.D.N.Y. Aug. 16, 2011) ("this

Court has consistently held that a protective order issued under Rule 26(c) can be enforced

through Rule 37(b)"). "Even if there were no such authority under Rule 37(b), courts have the inherent power to maintain the integrity of protective orders by imposing sanctions on those who violate them." Schiller v. City of New York, No. 04 Civ. 7921, 2007 U.S. Dist. LEXIS 40253, at *10 (S.D.N.Y. June 5, 2007); see also Dorsett, 2012 U.S. Dist. LEXIS at *17 (same).

Pursuant to 28 U.S.C. § 636(e), "the magistrate judge may conduct a hearing, but he or she functions only to certify the facts, and not to issue an order of contempt." Ferrara v. Nordev, LLC, No. 10 Civ. 5844, 2012 U.S. Dist. LEXIS 77304, at *3 (E.D.N.Y. Apr. 10, 2012), adopted by No. 10 Civ. 5844, 2012 U.S. Dist. LEXIS 77309 (May 30, 2012); see also Hunter TBA, Inc. v. Triple V Sales, 250 F.R.D. 116, 117-18 (E.D.N.Y. 2008) (holding that a magistrate judge must follow certification procedures set forth in § 636(e) when considering allegations of civil contempt). Section 636(e) provides, in relevant part:

> (e) In a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ;... Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e).

If a magistrate judge certifies the relevant facts to the district judge, "the district court must then conduct a de novo hearing at which issues of fact and credibility determinations are made." Ferrara, 2012 U.S. Dist. LEXIS at *3; see also 28 U.S.C. § 636(e) ("A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner

9

and to the same extent as for a contempt committed before a judge of the court").

A magistrate judge may decline to certify the facts of an alleged contempt to the district judge when he or she determines that the conduct does not rise to the level of contempt. See Bowens v. Atlantic Maintenance Corp., 546 F.Supp.2d 55, 2008 U.S. Dist. LEXIS 20325 (E.D.N.Y. Mar. 14, 2008), adopted by 546 F.Supp.2d 55, 2008 U.S. Dist. LEXIS 33533 (E.D.N.Y. Apr. 23, 2008) ("In light of the fact that plaintiffs have failed to show by clear and convincing evidence that defendant violated this Court's Order, the Court... declines to certify facts to the district court for a determination of contempt").

III.     The Elements of Civil Contempt

A party may be held in civil contempt for failure to comply with a court order if: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). Willfulness or bad faith is not a prerequisite to a contempt finding pursuant to Rule 37. See Dorsett, 2012 U.S. Dist. LEXIS at *21 ("a court need not find willfulness or bad faith as a prerequisite to a contempt finding"); Paramedics Electromedicina Comercial, Ltda. v. GE Medical Sys. Information Tech., Inc., 369 F.3d 645, 655 (2d Cir. 2004) ("It need not be established that the violation [of a court order] was willful."). "Process of contempt is a severe remedy, and should not be resorted to when there is fair ground of doubt as to the wrongfulness of the defendant's conduct." California Artifical Paving Stone Co. v. Molitor, 113 U.S. 609, 618, 5 S. Ct. 618 (1885).

IV.     Plaintiff's Conduct Does Not Constitute Civil Contempt

The Confidentiality Order provides that information in the public record or provided to a party by outside sources may be disseminated notwithstanding a "confidential" designation. (Confidentiality Order, Hrg. Ex. 2 at ¶ 15 ("Nothing herein shall prevent or in any way limit disclosure, use or dissemination of any documents or information that are in the public domain or which now are, or hereinafter become, available to a party independent of or outside of discovery proceedings...").)

There is no dispute that Mr. Bambrick's Town salary of $89,000 is public information.  It also cannot be disputed that, pursuant to Town Ethics Code § 23-10, Mr. Bambrick was under an obligation to disclose the range of his salary as the Foundation's director of operations, which he reported as between $20,000 and $60,000.  The plaintiff published letters to the editor of The Southampton Press reporting Mr. Bambrick's Foundation salary at $48,000 - well within the publicly disclosed range.  Similarly, by virtue of § 23-10, Mr. Bambrick was obligated to report the source of his private earnings.  Thus he reported in his annual § 23-10 disclosure that the source of this privately earned income was the Southampton Animal Shelter Foundation.

It is clearly information in the public domain that Susan Allen is the primary source of the Foundation's funding.  This is reflected in the numerous local news articles noted herein at § I(C).  Both The Southampton Press and the Sag Harbor Express explicitly identified Ms. Allen as the Foundation's principal benefactor, see Finlayson, Southampton Town Will Try Negotiating With Shelter Bidder, supra at § I(B); Maier, Petition Backs Private Bid for Animal Shelter, supra at § I(B), with The Southampton Press reporting the specific amount ($1.5

11

million) of funding the Foundation received from Ms. Allen, <u>see</u> Finlayson, <u>supra</u>. Her

longstanding financial commitment to the animal shelter is also well-documented, with a variety

of local papers reporting that she donated over one million dollars to finance the construction of

a new shelter in 1999. Freedman, <u>Controversy in Southampton</u>, <u>supra</u> at § I(B); Maier, <u>supra</u>;

Martin, <u>Foundation Takes Reins at Southampton Town Animal Shelter</u>, <u>supra</u> at § I(B);

Finlayson, <u>Southampton Councilwoman Mulls Bid to Privatize Town Animal Shelter</u>, <u>supra</u> at §

I(B). Thus, the source of Mr. Bambrick's private income is the Foundation, controlled and

funded by defendant Susan Allen, its principal benefactor. This too is public information as set

forth in the numerous press clippings noted above, and Mr. Bambrick's disclosure statement.

I find that the information disclosed was already in the public domain at the time that Ms.

Lynch published her letters to the editor of <u>The Southampton Press</u>. For the foregoing reasons, I

decline to certify the facts pursuant to 28 U.S.C. § 636(e) since the plaintiff's conduct does not

rise to the level of contempt.

Moreover, although some courts outside of this circuit have found that a court "has the

discretion to withhold a contempt adjudication when there is nothing more than a negligible

violation," <u>Dorsett</u>, 2012 U.S. Dist. LEXIS at *20, the parties have cited no cases where this

issue is addressed by the Second Circuit, and the Court's independent research has uncovered no

such case. Some District Courts within this Circuit have held that the fact that an alleged

violation of a court order was "<u>de</u> <u>minimis</u>" is not a defense to a contempt motion. <u>See</u>, <u>e.g.</u>

<u>Maya Swimwear, LLC v. Rivera</u>, No. 08 Civ. 9766, 2010 U.S. Dist. LEXIS 33232, at *6

(S.D.N.Y. Mar. 26, 2010) (Rakoff, D.J.) (holding that where there was evidence of a <u>de</u> <u>minimis</u>

violation of a court order, "the matter of contempt is not free of all doubt"); <u>Idaho Potato</u>

Comm'n v. Majestic Produce Corp., No. 97 Civ. 5512, 1998 U.S. Dist. LEXIS 16347, at *12

(E.D.N.Y. Sept. 9, 1998) (Glasser, D.J.) ("That the violation of a court order is de minimis does

not itself prevent a finding of contempt").

In contrast, other courts within this circuit have held that, where the alleged conduct at

issue "constitutes a de minimis violation" of the relevant court order, and results in no economic

injury to the other party, such facts may be "insufficient to warrant certification to the district

court, pursuant to 28 U.S.C. § 636(e)." Stein Indus., Inc. v. Jarco Indus., Inc., 33 F.Supp.2d 163,

169-70 (E.D.N.Y. 1999) (the alleged conduct "resulted in no economic injury... It was a single

act never repeated."); see also Kosher Sports, Inc. v. Queens Ballpark Co., No. 10 Civ. 2618,

2011 U.S. Dist. LEXIS 153424, at *43-44 (E.D.N.Y. Aug. 26, 2011) ("The claimed violation is

so technical and *de minimis*, and so far removed from the purpose for which the plaintiff sought

the injunction, that the Court respectfully recommends denial of contempt sanctions with regard

to this conduct").[6]

The disclosure here is negligible, insignificant, and de minimis. Neither Ms. Allen nor

Mr. Bambrick has suffered any harm or damages as a result of the challenged disclosure, and I

conclude that the plaintiff's conduct does not rise to the level that warrants a certification of

---

[6] Although there is no definitive law from the Second Circuit regarding whether or not the de minimis exception should be recognized within this Circuit, other circuits have stated that, in order to support a finding of contempt, the violation must be "more than *de minimis* or technical noncompliance." ViroMed Lab. Inc. v. United States, 87 Fed. Cl. 493, 500 (Fed. Cl. 2009) (quoting Navajo Nation v. Peabody Coal Co., 7 Fed. App'x 951, 955 (Fed. Cir. 2001)); see also Nat'l Labor Relations Bd. v. Hospital S.F., 989 F.2d 484, 1993 U.S. App. LEXIS 6616, at *10 (1st Cir. 1993) ("we nonetheless retain... the discretion to withhold a contempt adjudication for *de minimis* violations"); Nat'l Labor Relations Bd. v. Ralph Printing & Lithographing Co., 379 F.2d 687, 692 (8th Cir. 1967) (declining to impose contempt sanctions where violation found was de minimis).

contempt.  See Stein Indus., Inc., 33 F.Supp.2d at 169-70 (holding that where alleged contempt "constitutes a de minimis violation," it is "insufficient to warrant certification to the district court, pursuant to 28 U.S.C. § 636(e)"); see also Kosher Sports, Inc., 2011 U.S. Dist. LEXIS at *43-44 (court declined to certify facts pursuant to 28 U.S.C. § 636(e) where claimed violation was de minimis).

### RECOMMENDATION

For the foregoing reasons, the defendants' motion, pursuant to 28 U.S.C. § 636(e) is denied.

**SO ORDERED.**

Dated: Central Islip, New York
       January 7, 2013

/s/ E. Thomas Boyle
HON. E. THOMAS BOYLE
United States Magistrate Judge